BANK OF AMERICA, FSB *v.* EDWARD T. HANLON ET AL.
(AC 21312)

Foti, Dranginis and Daly, Js.

Argued June 4—officially released September 11, 2001

*Bruce S. Beck*, for the appellant (named defendant).

*Kimberly A. Pisinki*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendant Edward T. Hanlon[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Bank of America, FSB. On appeal, the defendant claims that the court improperly granted the plaintiff's motion for summary judgment.[2] We affirm the judgment of the trial court.

The pleadings, affidavits and other documentary information presented to the court reveal the following facts. On November 4, 1992, the defendant and his then spouse, the defendant Wendy R. Hanlon, executed a

---

[1] The defendant Wendy R. Hanlon, the former wife of the defendant Edward T. Hanlon, is not a party to this appeal. We therefore refer in this opinion to Edward T. Hanlon as the defendant.

[2] In his brief, the defendant also asks this court to review the denial of his motion for summary judgment. Generally, the denial of a motion for summary judgment is not appealable on an interlocutory basis, nor is it reviewable after a full trial. See *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 112, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000). Therefore, the denial of the defendant's motion for summary judgment is not reviewable.

$155,700 promissory note payable to Arbor National Mortgage, Inc. The note was secured by a mortgage on property at 165 South Road in Bolton. The note and mortgage deed subsequently were assigned to the plaintiff. Since May 1, 1999, the defendant has failed to make payments on the note.

By letter dated July 8, 1999, the plaintiff notified the defendant that "your mortgage payments are delinquent from the 06-01-99 installment, which constitutes a default under the terms of your mortgage loan documents. The total amount needed to cure the default as of this date is $3065.73. . . . Failure to cure the above-stated default by 08-07-99 may result in the noteholder's decision to accelerate the entire debt." On August 17, 1999, the plaintiff mailed a notice of acceleration to the defendant. The defendant has made no attempt to cure the default.

On October 6, 1999, the plaintiff began this foreclosure action. By way of special defense, the defendant claimed that the plaintiff did not comply with paragraph twenty-one of the mortgage deed in that it provided inadequate notice.[3] The parties filed cross motions for

---

[3] Paragraph twenty-one of the open end mortgage deed states: "Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph

summary judgment, and the plaintiff filed an objection to the defendant's motion. The court granted the plaintiff's motion for summary judgment as to liability only and, thereafter, rendered a judgment of strict foreclosure. The court denied the defendant's motion for summary judgment, which was based on his claim that he failed to receive proper notice of default and acceleration of the debt. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The standard for appellate review of a court's decision to grant a motion for summary judgment is well established. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . Further, the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) *Charlemagne* v. *Progressive Northwestern Ins. Co.*, 63 Conn. App. 596, 599, 777 A.2d 741 (2001).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because

---

21, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

the court rendered judgment for the plaintiffs as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Saunders* v. *Stigers*, 62 Conn. App. 138, 145, 773 A.2d 971 (2001).

The defendant claims that the plaintiff failed to provide sufficient notice of default as required by the mortgage deed prior to bringing this foreclosure action. He further argues that because proper notice is a condition precedent to a foreclosure action, the plaintiff's failure to notify him properly renders the judgment of foreclosure void. The plaintiff agrees that a notice of default is a condition precedent, but argues that it complied with the notice requirements of paragraph twenty-one of the mortgage. We agree with the plaintiff.

"It is well established that the exercise of an acceleration clause is proper upon an event of default as provided for and controlled by the terms of the note and the mortgage deed. *Burt's Spirit Shop, Inc.* v. *Ridgway*, 215 Conn. 355, 365, 576 A.2d 1267 (1990); *Christensen* v. *Cutaia*, 211 Conn. 613, 617, 560 A.2d 456 (1989)." *Connecticut Housing Finance Authority* v. *John Fitch Court Associates Ltd. Partnership*, 49 Conn. App. 142, 150, 713 A.2d 900, cert. denied, 247 Conn. 908, 719 A.2d 901 (1998). "Notices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and

the nature and object of their transactions." (Internal quotation marks omitted.) *Saunders* v. *Stigers*, supra, 62 Conn. App. 147.

"In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended." (Citations omitted; internal quotation marks omitted.) *Cohen* v. *Hartford*, 244 Conn. 206, 214–15, 710 A.2d 746 (1998); see also *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 746 A.2d 1277 (2000); *D'Addario* v. *D'Addario*, 26 Conn. App. 795, 603 A.2d 1199 (1992).

"The use of 'shall' in the note creates a condition precedent that must be satisfied prior to foreclosure. . . . The condition precedent under the note is the notice of the default . . . ." (Citation omitted.) *Northeast Savings, F.A.* v. *Scherban*, 47 Conn. App. 225, 228, 702 A.2d 659 (1997), cert. denied, 244 Conn. 907, 714 A.2d 2 (1998).

The operative agreement between the parties states in relevant part: "Lender shall give notice to Borrower prior to acceleration . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration . . . ." In essence, the defendant disputes the meaning of the notice provision contained in the mortgage. Specifically, the defendant argues that he was given only twenty-nine days within which to cure his default because both the day of the occurrence, July

8, 1999, and the terminal day, August 7, 1999, should be excluded.

If the phrase "not less than" is given its ordinary and common meaning in light of the mortgage document, the debtor must be given exactly that specified number of days or more to cure the default before the lender can accelerate the debt. We conclude that where a notice of default requires "not less than" a specific number of days, the period is calculated by excluding the date notice issues and including the last day given to cure the default.[4] Therefore, the relevant period begins on the day after the date of the notice and ends at midnight

---

[4] In support of the defendant's proposition that both days should be excluded, he cites *Treat* v. *Town Plan & Zoning Commission*, 145 Conn. 136, 139 A.2d 601 (1958). In *Treat*, our Supreme Court addressed similar language in the context of notice by publication for hearings on zoning amendments. The court held that the language "not less than ten days" in General Statutes (Cum. Sup. 1955) § 375d "evidences the intention of the framers of the statute that the period should be ten full or clear days." *Treat* v. *Town Plan & Zoning Commission*, supra, 138–39. In *Treat*, the notice was published on October 20, 1956, and the hearing was held on October 30, 1956. Id., 139. Consequently, the statutory requirement was not met.

The defendant's reliance on *Treat*, however, is misplaced. In *Treat*, because the hearing actually was held on the tenth day, the notice was published less than ten days before the hearing. In the present case, the July 8, 1999 notice provided that acceleration may occur if the defendant failed to cure before August 7, 1999. Therefore, the act of acceleration could not occur before August 8, 1999, because that would leave the defendant less than thirty days to cure.

The defendant further cites *Federal Home Loan Mortgage Corp.* v. *Bardinelli*, 44 Conn. Sup. 85, 667 A.2d 1315, aff'd, 39 Conn. App. 786, 667 A.2d 806 (1995). In *Bardinelli*, pursuant to a similar notice provision in its mortgage, the lender sent a notice of default to the defendant providing for " 'thirty days from the date of this notice' "; id., 88; rather than an exact date, within which to cure. The trial court found that "[w]hile the letter does not state that the defendant had until August 6, 1994 (i.e., thirty days from July, 6, 1994) to cure the default, the notice, in stating that the defendant had thirty days from the date of the letter . . . was sufficiently clear and unambiguous so as properly to advise the defendant of his rights." Id., 89. The calculation of the dates, however, is found in dicta, and it is not clear how it was performed. We conclude that the better analysis is that "not less than" thirty days means exactly thirty days or more.

584

on the last day. The mortgage deed mandates that "not less than 30 days from the date the notice is given . . . [is the date] by which the default must be cured . . . ." The notice of default was dated July 8, 1999, and the defendant was given until August 7, 1999, to cure the default. Theoretically, the defendant's period to cure began at 12:01 a.m. on July 9, 1999, and ended at midnight on August 7, 1999.[5] Because the plaintiff provided the defendant with exactly thirty days to cure, the condition precedent was satisfied. The plaintiff could accelerate the debt at any time after 12:01 a.m. on August 8, 1999.

Because there was no genuine issue of material fact and the court reasonably could find that the plaintiff had complied with the notice requirements of the mortgage, the plaintiff's motion for summary judgment properly was granted.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[5] For practical purposes, the period began at the start of business on July 9, 1999, and ended at the close of business on August 7, 1999.